No. 19,243.

Mrs. James Cooper *v.* Ben Gutierrez.
(360 P. [2d] 428)

Decided March 13, 1961.　Rehearing denied April 3, 1961.

1

Mr. JAMES H. MOSLEY, for plaintiff in error.

Mr. CHARLES S. VIGIL, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to the parties as they appeared in the trial court where defendant in error was plaintiff and plaintiff in error was defendant.

Plaintiff's complaint was based on a promissory note executed by defendant who filed her answer and alleged therein a number of defenses, one of which reads as follows:

### "THIRD DEFENSE

"1. Defendant alleges that said note was made and delivered by the defendant to the plaintiff for the amount claimed by plaintiff as his share of certain wool proceeds for the years 1952 and 1953.

"2. That after making the said note and before this action, the plaintiff and defendant were both made parties to an action in the District Court of Larimer County, Colorado, Civil Action No. 11,530. That in said action plaintiff asserted and submitted his claims for wool against defendant, including proceeds for the years 1952 and 1953, represented by said note.

"3. That by stipulation dated July 12, 1956, plaintiff compromised, settled and released all his claims against defendant and by order of Court dated August 13, 1956, said action and the matters involved therein was dismissed with prejudice; that by reason of the matters

aforesaid plaintiff is barred from prosecuting this action against this defendant."

Following trial judgment was entered in favor of plaintiff and against defendant, from which she prosecutes this writ of error.

There is no substantial dispute concerning the circumstances surrounding the execution of the note upon which the complaint was filed. The trial court in its findings summarized the evidence in this connection as follows:

"That at all times herein material, the plaintiff lived in Las Animas County, Colorado, and was engaged in extensive sheep raising and marketing. On October 4, 1950, Gutierrez (first party) and Cooper (second party) entered into a written agreement whereby Gutierrez delivered to Cooper 1,146 ewes and 34 rams. Cooper agreed to properly, and in a workmanlike manner, maintain, pasture, feed, water, and care for the said sheep at the latter's ranch in Moffat County, for a period of one year. Cooper was to bear all expenses of maintaining and caring for the sheep and to pay the personal property taxes on them while in his (Cooper's) possession, and return the same sheep or an equal number to Gutierrez one year thereafter. The agreement further bound Cooper (second party) to deliver to Gutierrez one-third of the lamb crop in the Spring of 1951, and Cooper to shear the sheep and account to Gutierrez for the full amount of wool produced, and to sell the same for the account of Gutierrez at a price to be mutually agreed between the parties, and upon receiving said proceeds from the sale of such wool so produced, Cooper was to immediately pay over to the first party (Gutierrez) one-third of such proceeds from the sale of the wool. Cooper, as his sole compensation, was to receive two-thirds of the proceeds from the sale of the wool, and two-thirds of the proceeds from the sale of the lamb crop.

"THE COURT FURTHER FINDS that the sheep were delivered to Cooper who took charge of them; that in

4

season he sheared the sheep and represented to Gutierrez that the wool was stored, but Gutierrez learned about October, 1953, that the wool had been sold, collected for, and the entire proceeds appropriated by Mr. Cooper or the Cooper ranch operations. About November 3, 1953, Mr. Gutierrez and his wife took trucks to the Cooper ranch at Meeker, Colorado, for the purpose of taking possession of his (Gutierrez's) sheep, and went also for the purpose of collecting for his one-third of the wool that had previously been sold. The value of the one-third of the wool crops so sold was $3,195.00 or more.

"THE COURT FURTHER FINDS that Cooper, for several months before November 3, 1953, was not attentive to business, had been drinking intoxicants, and was generally leading a profligate life. Because of which and at the demand of the bank where Mr. and Mrs. Cooper did business, Mrs. Cooper took over the management of the ranch in its entirety, signed notes when necessary to borrow operating or other money from the bank, and Mrs. Cooper was the only one whose signature on a check was recognized. Prior to and during this time, Cooper and his wife, the defendant, were, in fact and by operation of law, partners in the conduct of the ranch and its affairs, and in the performance of the aforesaid contract with Gutierrez, but because the partnership relationship alone is not the only basis of the judgment herein, it is unnecessary to enlarge upon this factor.

"When Gutierrez appeared, about November 3, 1953, for the purpose of taking possession of his sheep and collecting for his one-third of the wool, James Cooper was away from home, and had been for several hours, if not for a few days, as had been his custom in previous months, and Mrs. Cooper, the wife, was continuing to operate and manage the ranch and the entire ranch and business affairs, including the Gutierrez sheep operation. It appears Gutierrez's share of the wool crop was expended, in part at least, by Mrs. Cooper in the busi-

ness operations. Gutierrez retrieved some of his sheep. In order to account for the wool sold and unaccounted for to Gutierrez, the defendant signed the note herein involved for $3,195.00 (Plaintiff's Exhibit 1), by signing her husband's name to said note, which she was authorized to do, but also signed her own name for the purpose of paying for at least some of Gutierrez's share of wool. Mrs. Cooper signed her own name, as an individual and not as agent, and delivered the note to Gutierrez, all freely and without duress, compulsion, or any taint of fraud overreaching or imposition, and for a valuable consideration. * * * "

Soon after the note was executed and delivered, the dead body of James Cooper was found by his wrecked automobile. Letters of administration were issued to the defendant in Moffat county and in February 1954 the plaintiff filed a claim against said estate "for sheep converted by the deceased to his own use." The claim contained a statement that:

" * * * this claim is made with the intention of covering any and all loss and with present suit of First National Bank of Denver against Ben Gutierrez, together with other possible claims and suits, and all related expenses and the costs accruing thereon."

The amount of the claim was $40,000.00 and was paid pro rata on the basis of a reduced allowance of $9,000.00 which came about as hereinafter described.

The First National Bank of Denver and other parties claimed mortgage liens on the sheep owned by plaintiff, which had been placed in the keeping of Mr. Cooper. An action was instituted by them in the district court of Larimer county against the plaintiff and others. Defendant in her individual capacity, and as administratrix of the estate of James Cooper, was a party to that action. Plaintiff asserted his claim against the defendant both as to her individual liability and as administratrix of the estate for the wool proceeds for the years 1952 and 1953, with reference to which the promissory note in-

volved in the instant case was executed and delivered to the plaintiff. The Larimer county suit was settled by stipulation and dismissed with prejudice. The stipulation provided that the $40,000.00 claim of plaintiff filed in the estate should be approved by defendant and allowed in the sum of $9,000.00. As already stated, this was done. Thereafter this action on the promissory note was commenced by plaintiff.

Whatever the merits of the Larimer county action may have been, and the defenses and counterclaims which were asserted therein by the parties, it cannot be disputed that the rights and liabilities of defendant in connection with matters related to the handling of plaintiff's sheep by her husband and herself were directly involved.

Paragraph II of the stipulation provides:

"That this stipulation shall apply for the purpose of settling certain claims between the parties hereto, *not only in the above entitled action, but for all purposes,* and in particular against the Estate of James R. Cooper, Deceased. * * * " (Emphasis supplied.)

In *Pomponio v. Larsen,* 80 Colo. 318, 251 Pac. 534, this court said with reference to a defense of res judicata:

"It is fundamental, and well understood, that the judgment of any court of competent jurisdiction, so long as it remains unreversed, is conclusive upon the parties and their privies when the judgment is rendered upon the merits, and without fraud or collusion, upon a matter within the jurisdiction of the court rendering the judgment. Such a judgment is an absolute bar to the prosecution of a second action on the same claim or demand, not only as to matters actually in controversy in the first action, but as to every matter which might have been litigated and determined therein incident to and necessarily connected with the subject matter of the litigation."

In *Newby v. Bock,* 120 Colo. 454, 210 P. (2d) 985, the

above quotation was approved and in addition thereto we said:

"The general rule seems to be that if there is identity of subject matter; identity of cause of action; identity of persons to the action, and identity of capacity in the persons for which or against whom the claim is made, that these four identities existing, a prior judgment is conclusive not only as to every question actually presented and decided, but also as to every question within the issues which might have been presented and determined. * * * "

These principles are controlling in the instant case. The defense of res judicata was good and the judgment accordingly is reversed and the cause remanded with directions to dismiss the complaint.

MR. JUSTICE DAY and MR. JUSTICE FRANTZ concur.